**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02154-WJM-MEH

MARIE T. GIANNANGELI,

    Plaintiff,

v.

TARGET NATIONAL BANK, N.A.,

    Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

This matter is before the Court on Defendant Target National Bank's Motion for Dismissal Under Rule 12(b)(6) (the "Motion"). (ECF No. 7.) The Motion seeks dismissal of Plaintiff Marie T. Giannangeli's Complaint and Jury Demand Including Complaint for Class Action (the "Complaint"). (ECF No. 1.) The Motion is fully briefed (*see also* ECF No. 17, 18), and ripe for adjudication. For the following reasons, the Motion is GRANTED.

### I. BACKGROUND

Plaintiff filed this action on August 17, 2011. (ECF No. 1.) In the Complaint, Plaintiff challenges the interest rates that Defendant has charged her on her Target "REDcard" credit card, alleging that "Target [has] always charged Plaintiff . . . a minimum interest charge of 25.99%." (*Id.* ¶ 5.)[1] The Complaint brings both an individual claim and a putative class action claim, alleging that Target, by charging these

---

[1] This relationship between Plaintiff and Defendant is governed by a credit card agreement entered into by Plaintiff in 2009. (*Id.* ¶¶ 4-5.)

rates to Plaintiff and other customers, has violated the National Banking Act, 12 U.S.C. § 85.  (*Id.* ¶¶ 17-22.)  While the Court discusses Plaintiff's arguments in more detail below, Plaintiff's case is premised on the argument that Defendant is not allowed to charge her more than the seven percent maximum interest rate found in 12 U.S.C. § 85.  (*Id.* ¶¶ 7-10, 17-22.)

On October 3, 2011, Defendant filed its Motion to Dismiss.  (ECF No. 7.)  Defendant's basic argument is that the interest rate allowed by South Dakota law (and not that in 12 U.S.C. § 85) applies, and that South Dakota law allows Defendant to charge Plaintiff the interest rate for which the parties contracted.  (*See id.*)

On November 7, 2011, Plaintiff filed a Response to the Motion.  (ECF No. 17.)  On November 22, 2011, Defendant filed a Reply.  (ECF No. 18.).

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).  "Thus, 'a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

The parties agree that the viability of Plaintiff's Complaint turns on the proper interpretation of 12 U.S.C. § 85.  That statute provides, "Any association may take, receive, reserve, and charge on any loan . . . interest *at the rate allowed by the laws of the State . . . where the bank is located.*"  12 U.S.C. § 85 (emphasis added).  The statute continues, "*When no rate is fixed by the laws of the State . . .*, the bank may take, receive, reserve, or charge a rate *not exceeding 7 per centum . . . .*"  *Id.* (emphasis added).

The parties also agree that Defendant is located in South Dakota, and so, applying 12 U.S.C. § 85, the Court should evaluate what interest rate is "allowed" by South Dakota law and whether South Dakota law "fixe[s]" an interest rate.  The governing South Dakota statute provides,

> Unless a maximum interest rate or charge is specifically established elsewhere in the code, *there is no maximum interest rate or charge*, or usury rate restriction between or among persons, corporations, limited liability companies, estates, fiduciaries, associations, or any other entities *if they establish the interest rate or charge by written agreement*.  A written agreement includes [credit card agreements].

S.D. Codified Laws § 54-3-1.1 (emphasis added); *see also id.* § 54-11-9.

Plaintiff's case hinges on the argument that, because South Dakota does not "fix" a *particular specific maximum* interest rate, then South Dakota does not "fix" an interest rate within the meaning of 12 U.S.C. § 85, and so 12 U.S.C. § 85's maximum interest

rate of seven percent applies. 12 U.S.C. § 85 can certainly be read that way (although it is also susceptible to contrary interpretations[2]). However, Plaintiff's interpretation of 12 U.S.C. § 85 has been uniformly rejected in the case law, including controlling authority from the United States Supreme Court. Instead, courts have consistently held that, where a state law allows parties to contract for any interest rate, a national bank located in that state may contract for any interest rate, and is not limited by the seven percent cap in 12 U.S.C. § 85.

In *Daggs v. Phoenix National Bank*, 177 U.S. 549 (1900), the Supreme Court resolved the precise issue presented here (interpreting a prior, but virtually identical, version of 12 U.S.C. § 85, and a state law equivalent to that involved here).[3] The Court held that the proper interpretation of the federal statute is that a national bank "may charge interest at the rate *allowed* by the laws of the state or territory where it is located," and that the term "'*fixed by the laws*' [under the statute] must be construed to mean '*allowed by the laws*,' not a rate expressed in the laws." *Id.* at 555 (emphasis in original). The Court explained that adopting the appellant's interpretation of the federal statute would put national banks at a significant competitive disadvantage with state banks, which Congress could not have intended in passing the statute, stating that "[t]he

---

[2] *E.g.*, the interpretation arrived at by the Supreme Court in *Daggs v. Phoenix National Bank*, 177 U.S. 549 (1900), discussed directly below.

[3] The language of that statute, as interpreted by *Daggs*, provided, "[A] national bank may charge on any note interest at the rate allowed by the laws of the state or territory where it is situated. . . . [H]owever, that if no rate is fixed by such laws the bank may not charge a greater rate than 7 per cent . . . ." *Id.* at 554 (citing §§ 5197 and 5198 of the Revised Statutes of the United States). The governing Arizona statute provided, "Parties may agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract . . . ." *Id.* (citing the governing Arizona statute).

4

intention of the national law is to adopt the state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it." *Id.*

Although there is not a substantial amount of case law on this issue, the Court's research indicates that every other court that has addressed this issue has followed *Daggs*.[4]  For example, in *Hiatt v. San Francisco National Bank*, 361 F.2d 504 (9th Cir. 1966), the Ninth Circuit stated that "[w]e cannot avoid the plain direction of the . . . expressions of the Supreme Court [in *Daggs*]," and held that "the language of 12 U.S.C. § 85 . . . should be construed as meaning that a national association located in a particular state may charge as much interest as may be legally charged by the state's banks under the state's existing law." *Id.* at 507.  In *Hawkins v. Citicorp Credit Servs., Inc.*, 665 F. Supp. 2d 518 (D. Md. 2009), the court came to the same conclusion in holding that South Dakota law (the law applicable here) governed, not the seven percent maximum rate found in 12 U.S.C. § 85.  *Id.* at 523.  *See also Tully v. Citibank (South Dakota), N.A.*, 173 S.W.3d 212, 218 & n.7 (Tex. Ct. App. 2005) ("Assuming that Citibank is a national bank located in South Dakota, . . . it may charge interest at the rate authorized by South Dakota.").[5]

---

[4] While the Court did its own independent scouring of the case law, it is notable that both Westlaw and Lexis indicate that there is no negative authority to *Daggs*.

[5] *See also Citibank South Dakota NA v. Machleid,* No. 63409-7-I, 2010 WL 428006, at *5 (Wash. Ct. App. Feb. 8, 2010) ("Citibank is a national bank located in South Dakota . . . . The maximum interest rate South Dakota law allows is that interest rate to which the parties agree in writing. . . . [Thus, the interest rates charged by Citibank] were authorized by South Dakota law and, thus, were not usurious."); *Citibank (South Dakota), N.A. v. Shapiro*, No. 11-P-955, 2012 WL 1172182, at *2 (Mass. Ct. App. Apr. 10, 2012) (same); *Higginbottom v. U.S. Bancorp*, No 10-CV-04593, 2011 WL 1558681, at *3 (N.D. Cal. Apr. 25, 2011); *Keresey v. Nev. Nat'l Bank*, 646 P.2d 1224, 1225 n.3 (Nev. 1982).

Plaintiff has not pointed to any contrary authority on point. Instead, Plaintiff argues, "*Daggs* is inconsistent with later Supreme Court authority, is inconsistent with the legislative history of the [National Banking Act], and assuming it has any remaining vitality, *Daggs* should be limited to its facts." (ECF No. 17, at 5.) The Supreme Court authority that Plaintiff refers to is *Evans v. National Bank of Savannah*, 251 U.S. 108 (1919), and *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003). Those cases do not help Plaintiff's cause for several reasons. First, neither of those cases addressed the particular issue that is presented here and that was presented in *Daggs*. Instead, *Evans* addressed the National Banking Act's preemption of state usury law, while *Beneficial National Bank* involved the related issue of whether a claim brought in state court alleging only a violation of state usury law could be removed to federal court. Thus, those cases' general statements of law regarding the National Banking Act, seized upon by Plaintiff as purportedly calling *Daggs* into question, do no such thing. Notably, neither of those cases even cite to *Daggs*. Therefore, *Daggs*, and not those cases, continues to be controlling here.

Also, Plaintiff's focus on the legislative history of the National Banking Act is misguided because *Daggs* is controlling Supreme Court precedent interpreting the relevant provisions of the National Banking Act. *See Mass. Mut. Life Ins. Co. v. United States*, 103 Fed. Cl. 111, 162 (Fed. Cl. 2012) ("Although defendant cited extensively to non-binding legislative history . . ., the Federal Circuit precedent . . . is binding on this court . . . ."); *Rolls-Royce PLC v. United Techs. Corp.*, No. 1:10cv457, 2011 WL 1740143, at *3 (E.D. Va. May 4, 2011) ("[Plaintiff] urges this Court to ignore . . . controlling precedent in favor of its own interpretation of the statute by focusing on the

6

legislative history; however, a district court cannot ignore binding . . . precedent."). If *Daggs* misinterpreted Congress's intent in passing the applicable language from the National Banking Act, Congress could have amended the National Banking Act to reflect its actual intent. Despite the fact that Congress has amended the National Banking Act several times since *Daggs* was decided in 1900, it has not changed the statutory language governing the issue presented here.

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1)   Defendant Target National Bank's Motion for Dismissal Under Rule 12(b)(6) (ECF No. 7) is GRANTED; and

(2)   This action is DISMISSED WITH PREJUDICE.

Dated this 2nd day of August, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge