**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02154-WJM-MEH

MARIE T. GIANNANGELI,

    Plaintiff,

v.

TARGET NATIONAL BANK, N.A.,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

---

In this action, Plaintiff brought claims against Defendant under the National Banking Act ("NBA"), 12 U.S.C. §§ 85 and 86, alleging that Defendant charged Plaintiff interest rates on a credit account that exceeded the NBA's maximum allowable rate of seven percent. (ECF No. 1.) On August 2, 2012, this Court granted Defendant's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) The Court held that South Dakota usury law, not the NBA, applied in this action, and therefore Defendant was not limited by the NBA's seven percent interest rate cap. (*Id.*)

This matter is before the Court on Plaintiff's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) ("Motion"). (ECF No. 29.) Defendant has filed a Response to the Motion (ECF No. 31), and Plaintiff has filed a Reply (ECF No. 34). The Motion is ripe for adjudication. For the following reasons, the Motion is DENIED.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) authorizes the filing of a motion to alter or

amend a judgment. "Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

A Rule 59(e) motion "cannot be used to advance [new] arguments that could have been raised in prior briefing." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008); *see also Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993) ("Rule 59(e) cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment."); *GSS Group Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) ("Rule 59(e) motions are aimed at reconsideration, not initial consideration.") (internal quotations omitted).

## II.  ANALYSIS

In the Motion, Plaintiff argues that the Court "has not considered [one] aspect of the Plaintiff's Complaint," namely, "whether a Bank commits usury when it charges and extracts interest beyond the contracted rate under an illusory (and thus unconscionable and unenforceable) contract." (ECF No. 29, at 3, 4.)  As support for the proposition that the Court missed this aspect of Plaintiff's case, Plaintiff points to a particular paragraph in the factual background section of her Complaint, which states,

> [A]ccording to the Agreement the interest rate charge should have been 13.25%, 17.25%, or 22.90%.  However, the Agreement also states that Target "may change the terms, including your APR, at any time . . ."  In fact, Target always charged Plaintiff well in excess of the interest rates stated in the Agreement with a minimum interest charge of 25.99%.  Thus, there was no particular rate agreed upon by the Plaintiff and Defendant and the rates stated in the Agreement were illusory.  Regardless of the interest rates stated in the Agreement, Target charged whatever interest rate it wanted on its own whim and caprice.

(ECF No. 1, ¶ 6.)

Based on this factual allegation, Plaintiff certainly could have tried to pursue a legal claim that Defendant violated the NBA by charging interest rates that exceeded those allowed under the parties' contract. However, for the reasons stated below, Plaintiff did not do so, either in her Complaint, or in opposing Defendant's Motion to Dismiss. The Court declines to consider this new argument raised for the first time in her Rule 59(e) Motion. *See Grynberg*, 538 F.3d at 1354; *Steele*, 11 F.3d at 1520 n.1.

The factual background of Plaintiff's Complaint proceeded to allege that,

> Under Section 85 of the NBA, the state where the national bank is located may determine the maximum rate of interest the national bank may charge. For purposes of the NBA, Target is located in South Dakota. . . . In the case of South Dakota, it has fixed no particular maximum rate of interest. Rather, under South Dakota law, the statute specifically states that there is no maximum rate of interest. . . . *Given, that . . .South Dakota has failed to fix a particular maximum rate of interest for purposes of usury, the NBA prescribes that the maximum interest rate a national bank located in South Dakota may charge is 7% per annum*. . . . Target charged the Plaintiff interest in excess of the rate of 7% per annum.

(*Id.* ¶¶ 7-10 (emphasis added).) Then, crucially, in the claims raised in Plaintiffs' Complaint, Plaintiff only pursued this theory that Defendant violated the NBA because it charged in excess of seven percent interest, and ***not*** that it violated the NBA because it charged rates in excess of the rates contracted for by the parties. Specifically, Plaintiffs' claims read, "Under Section 85 of the NBA, Target may not charge in excess of 7% interest per annum. However, Target knowingly charged Plaintiff in excess of 7% per annum. As a result of charging Plaintiff in excess of 7% per annum, [Plaintiff is entitled to damages under the NBA]." (*Id.* ¶¶ 18-19; *see also id.* ¶¶ 21-22.)

In her Response to Defendant's Motion to Dismiss, Plaintiff made clear that her

claims were based only on the theory that, given the interplay between the NBA and South Dakota usury law, the NBA, and not South Dakota law, applies in this case. Specifically, the Introduction of Plaintiff's Response to Defendant's Motion to Dismiss clearly states,

> [T]his case comes down to a discrete legal question which is a matter of first impression in the 10th Circuit. Namely, did South Dakota "fix" an interest rate for purposes of usury under the NBA? The simple answer is "no." As a result, the Defendant is limited to charging the federal ceiling of 7% interest per annum under the NBA. Since Target knowingly charged interest in excess of 7%, it committed usury.
> This issue is of critical importance to the current state of affairs in our nation. The National Banks have done an end run around the usury protections of the NBA. The banks have bootstrapped two Supreme Court cases together, obtained the complicity of several States, most notably South Dakota, in an attempt to deregulate the main product of the National Banks – the loaning of money and the charging of interest. . . .
> Contrary to the assertions of Target, the NBA does not allow a State to abolish interest rate restrictions.

(ECF No. 17, at 2.)  In the body of her Response, Plaintiff went on to provide lengthy argument regarding the history of usury law dating back to Biblical times (*id.* at 5-8), and the legislative history of the NBA (*id.* at 8-11).  Plaintiff also defended a strained reading of Supreme Court jurisprudence (*id.* at 11-13), and provided a description of South Dakota usury law (*id.* at 13-15).  For reasons known only to Plaintiff, at no point in the Response did she present any argument regarding Defendant's alleged charging of interest rates that exceeded the rates agreed upon in the parties' contract.  Finally, in the Conclusion of the Response, Plaintiff again clarified that her claims only related to how the NBA and South Dakota usury law should be reconciled, to wit,

> **VIII. Conclusion.**
>
> South Dakota has exceeded its limited authority under the NBA by abolishing usury and allowing the National Banks to charge unlimited

> interest. Congress intended to have strong usury protections in the NBA. . . .
>
> Thus, South Dakota has failed to fix a maximum usury rate as required by the NBA . . . . Since it has failed to fix a maximum usury rate, . . . the National Banks located in South Dakota are limited to charging no more than 7% interest per annum. Since Target has charged in excess of 7%, it has violated the NBA and has committed usury.
>
> Given the above, the Plaintiff has stated a claim which is plausible on its face, and Defendant Target's Motion to Dismiss should be DENIED.

(*Id.* at 15.)

Finally, Plaintiff notably did not argue in her Response that, alternatively, she should be allowed leave to amend her Complaint to further clarify her claims.

Plaintiff's current Motion blames the Court for failing to address an "aspect" of the case brought by Plaintiff in this action. That blame is wholly misplaced, as it appropriately lies entirely with Plaintiff and her counsel. *See Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999) ("In our adversarial system, I am under no obligation to conduct research to provide the proper support for arguments presented by any party other than *pro se* ones . . . ."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

### III. CONCLUSION

In accordance with the foregoing, Plaintiff's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) (ECF No. 29) is DENIED.

Dated this 18th day of October, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge

5